# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEMORIAL HOSPITAL AT GULFPORT     )
4500 Thirteenth Street                     )
Gulfport, Mississippi 39501             )
                                       )
       Plaintiff,                    )
                                       )    Case No.: 1:20-cv-1375
   v.                             )
                                       )
ALEX M. AZAR, II                    )
in his official capacity as Secretary,    )
UNITED STATES DEPARTMENT OF     )
HEALTH AND HUMAN SERVICES      )
200 Independence Ave., S.W.         )
Washington, D.C. 20201             )
                                       )
       Defendant.                 )
_____)

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY
## AND INJUNCTIVE RELIEF UNDER THE MEDICARE STATUTE

### NATURE OF ACTION

1.     Plaintiff (identified above and in paragraph 9 and referred to as "Plaintiff Hospital") commences this action to request judicial review of an unlawful administrative policy respecting Medicare reimbursement to hospitals.  More specifically, this case concerns the calculation of the Medicare disproportionate share hospital ("DSH") payment to hospitals and, in particular, the proper treatment in the DSH calculation of inpatient hospital days for patients enrolled in a Medicare Advantage plan under Part C of the Medicare statute.  That calculation has been previously addressed by this Court, the United States Court of Appeals for the District of Columbia Circuit, and the United States Supreme Court.  The ultimate issue presented is whether Medicare "enrollees in Part C are 'entitled to benefits' under Part A, such that they should be counted in the Medicare [part A/SSI] fraction [one part of the DSH payment formula], or whether, if not regarded as 'entitled to benefits under Part A,' they should instead be included

in the Medicaid fraction [the second part of the DSH payment calculus]." *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014) ("*Allina I*").

2.      In *Allina I*, the D.C. Circuit affirmed the portion of this Court's decision declaring invalid the Secretary's regulation adopted in 2004, which changed the Secretary's policy on the treatment of Part C days to include them in the Medicare Part A/SSI fraction and exclude them from the numerator of the Medicaid fraction used to calculate the DSH payment. *Id.* at 1111.

3.      In *Allina Health Servs. v. Price*, 863 F.3d 937, 944 (D.C. Cir. 2017) ("*Allina II*"), the D.C. Circuit held that the Secretary's continued application after *Allina I* of the Part C days policy adopted in the Secretary's 2004 rule is procedurally invalid because the Secretary did not engage in the notice-and-comment rulemaking procedure required under the Medicare statute, 42 U.S.C. § 1395hh. *Allina II* was recently upheld by the United States Supreme Court. *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019).

4.      Although the D.C. Circuit has twice ruled against the Secretary's 2004 policy, and the Supreme Court has upheld the *Allina II* decision, the Secretary nonetheless has not acquiesced in those decisions. Instead, the Secretary unlawfully has continued to apply the Part C days policy adopted in the now-vacated 2004 rule, including in the Secretary's payment determinations at issue for the Plaintiff Hospital in this case.

5.      The Secretary's continued application of the vacated 2004 rule and the Part C policy adopted in that rule are procedurally and substantively invalid. The Part C policy adopted in the 2004 rule and applied to Plaintiff Hospital is not founded on reasoned decision-making and is inconsistent with the DSH provision of the Medicare statute. The Plaintiff Hospital seeks an Order setting aside the Secretary's DSH payment determinations and directing the Secretary to recalculate the Plaintiff Hospital's DSH payments by excluding Part C days from the

Medicare Part A/SSI fraction and including the Medicaid-eligible portion of those days in the numerator of the Medicaid fraction.

## JURISDICTION AND VENUE

6.      This action arises under the Medicare statute, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.

7.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

8.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

## PARTIES

9.      The Plaintiff Hospital in this action is Memorial Hospital at Gulfport, a Mississippi community (public) hospital located in Gulfport, Mississippi.  The Plaintiff Hospital's Medicare Provider Number is 25-0019, and the hospital fiscal years in issue in this action are fiscal years ending September 30, 2007 and September 30, 2008.

10.      Defendant Alex M. Azar, II, is sued in his official capacity as Secretary of the United States Department of Health and Human Services ("Secretary"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, his subordinates, his official predecessors or successors, and the Department and its components that he oversees, as the context requires.

11.      The Centers for Medicare & Medicaid Services ("CMS") is a component of the Secretary's agency, delegated by the Secretary with responsibility for the day-to-day administration of the Medicare program.  References to CMS herein include its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

12.     Medicare is a federally-funded health insurance program primarily for individuals age 65 and older.

13.     Medicaid is a joint federal and state health insurance program primarily for low-income individuals.

14.     An individual who is eligible for both the Medicare and Medicaid programs is referred to as a "dual eligible."

15.     The Medicare program consists of several "parts," two of which are relevant to this action.  "Medicare Part A" covers inpatient hospital services.  Since 1983, Medicare has paid most hospitals for the operating costs of inpatient hospital services under a prospective payment system ("PPS").  Under PPS, Medicare pays hospitals predetermined, standardized amounts per patient discharge, subject to certain payment adjustments.  One of the PPS payment adjustments is the DSH payment.

16.     A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates per discharge.  A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage."  The disproportionate patient percentage determines both a hospital's qualification for the DSH payment and the amount of the DSH payment.  The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages.

17.     The first fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction."  Federal law defines the Medicaid fraction as:

the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such

> days) were eligible for medical assistance under a State plan approved under [the
> Medicaid statute, title XIX of the Social Security Act], but who were *not entitled*
> *to benefits under part A* of [the Medicare statute, title XVIII of the Social Security
> Act], and the denominator of which is the total number of the hospital's patient
> days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As reflected in the italicized language

above, the numerator of the Medicaid fraction consists of the number of hospital days for

patients who were both eligible for Medicaid and "not entitled to benefits under part A" of the

Medicare statute.

18.     The other fraction that is used to compute the DSH payment is the "Medicare Part

A/SSI fraction."  Federal law defines the Medicare Part A/SSI fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of
> such hospital's patient days for such period which were made up of patients who
> (for such days) were *entitled to benefits under part A* of [the Medicare statute] and
> were entitled to supplemental security income benefits (excluding any State
> supplementation) under subchapter XVI of this chapter, and the denominator of
> which is the number of such hospital's patient days for such fiscal year which
> were made up of patients who (for such days) were *entitled to benefits under part*
> *A* of [the Medicare statute]...

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). As the italicized language indicates, the

Medicare Part A/SSI fraction consists solely of hospital days for patients who were "entitled to

benefits under part A" of Medicare.  The denominator of that fraction includes all Medicare Part

A days, whereas the numerator includes only those Part A days for patients who are also entitled

to Social Security Income ("SSI") benefits under title XVI of the Social Security Act. CMS

computes the Medicare Part A/SSI fraction for each federal fiscal year, and that fraction must be

used to compute a hospital's DSH payment for the cost reporting period beginning in the federal

fiscal year.  42 C.F.R. §§ 412.106(b).

## Medicare Part C

19.     The other part of Medicare relevant to this action is "Medicare Part C," commonly known as "Medicare Advantage" (and formerly known as Medicare+Choice, or M+C).  Under Part C, a Medicare beneficiary, as an alternative to receiving traditional benefits under Part A, can elect to receive Medicare benefits through enrollment in a Medicare Advantage plan (health plans managed by private entities under contract with the Secretary).  42 U.S.C.  §  1395w-21(a)(1);  *see also*  63  Fed. Reg. 34968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

20.     Prior to the 2004 rulemaking at issue, "the Secretary treated Part C patients as *not* entitled to benefits under Part A."  *Allina I*, 746 F.3d at 1106.  The pre-2004 regulation limited the Medicare Part A/SSI fraction to the number of Medicare patient days that were paid by Medicare Part A, and included other Medicare patient days (not covered under Part A) in the numerator of the Medicaid fraction to the extent that those patients were dual eligibles.  *See* 42 C.F.R. § 412.106(b)(2)(i) (2003).  The pre-2004 regulation mandated that only covered Medicare Part A inpatient days are included in the Medicare Part A/SSI fraction.  51 Fed. Reg. 16772, 16788 (May 6, 1986); *see also* 51 Fed. Reg. 31454, 31460-61 (Sept. 3, 1986) (stating that limiting the Medicaid fraction to days where "the Medicaid program is the primary payor" was "consistent with" the Medicare Part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the Medicare Part A/SSI fraction to "covered Medicare Part A inpatient days").

21.     The Secretary's written guidance prior to 2004 repeatedly expressed the Secretary's policy that Part C patient days, as days for which patients were not entitled to Part A payment, were to be excluded from the Medicare Part A/SSI fraction. The Secretary's guidance included instructions to hospitals and program memoranda transmitting the Secretary's computation of Medicare Part A/SSI fractions on an annual basis.

22.     The Secretary's consistent policy and practice, before the adoption of the 2004 rule, was to treat Part C days as *not P*art A days.

23.     In a 2003 proposed rule, the Secretary stated that "once a beneficiary has elected to join an M+C plan, that beneficiary's benefits are no longer administered under Part A. Therefore, we are proposing to clarify that once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27154, 27208 (May 19, 2003). Further, the Secretary explained that "[t]hese patient days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the [Part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id*.

24.     In the preamble to a final rule adopted in 2004, however, the Secretary reversed course and "abruptly announced a change in policy." *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd in part, rev'd in part on other grounds*, 746 F.3d at 1107-10. That rule announced that the Secretary is "adopting a policy" to include Part C days in the Medicare Part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004.  69 Fed. Reg. 48916, 49099 (Aug. 11, 2004).

25.     When CMS initially transmitted the Medicare Part A/SSI fractions for federal fiscal years 2005 and 2006, however, those fractions continued to exclude Part C days. *See* CMS

Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 part A/SSI fractions and specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted in id*. ¶ 156,930 (same for federal fiscal year 2006 fractions).

26.     In July 2007, CMS issued a revision to a Medicare program manual, with a "purported 'effective date' of October 1, 2006," that permitted hospitals to submit the data necessary to implement the new policy regarding Part C days.  Thereafter, in August 2007, the Secretary further amended the text of the DSH regulation governing Part C days without affording hospitals prior notice or opportunity for comment. 72 Fed. Reg. 47130, 47384 (Aug. 22, 2007). Following the amendments in 2004 and 2007, the regulation provided that the Medicare Part A/SSI fraction includes all patient days (not just "covered" days) for patients entitled to "Medicare Part A (*or Medicare Advantage (Part C)*)." *Id*. at 47,411 (amending §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added). The amendment of the regulation was made effective October 1, 2007 (the beginning of federal fiscal year 2008).

### The *Allina I* Litigation

27.     In July 2009, the Secretary first published Medicare Part A/SSI fractions for hospital cost reporting periods beginning in federal fiscal year 2007. Those fractions for the first time included Part C days.

28.     In *Allina I*, hospitals challenged the applicability of the 2004 rule on the treatment of Part C days in the DSH payment calculation for cost reporting periods beginning in federal fiscal year 2007, contending, among other things, that the abrupt reversal in policy did not

comply with notice-and-comment requirements, and was not the product of reasoned decision-making.

29.     This Court agreed and held that the policy announced in the 2004 final rule regarding the inclusion of Part C days in the Medicare Part A/SSI fraction was not the logical outgrowth of the 2003 proposed rule. 904 F. Supp. 2d at 89-92. This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face'" and "her reasoning for the change was brief and unconvincing." *Id.* at 93 (quoting *Northeast Hosp.*, 657 F.3d at 15). Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule … that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion." *Id*. at 95.

30.     While the Secretary's appeal from this Court's decision in *Allina I* was pending before the D.C. Circuit, the Secretary engaged in a new rulemaking on the treatment of Part C patient days, effective only prospectively, beginning October 1, 2013. In that rulemaking, the Secretary "proposed to readopt the policy of counting the days of patients enrolled in [part C] plans in the Medicare fraction."  78 Fed. Reg. 50496, 50615 (Aug. 19, 2013). Accordingly, effective as of October 1, 2013, the rule governing the DSH calculation is the same as the previously invalidated 2004 rule.  *See id.* at 50619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

31.     On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical outgrowth of the proposed rule." 746 F.3d at 1109.

32.     In addition, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted." *Id.* at 1111.

## The *Allina II* Litigation

33.     In mid-June 2014, the Secretary published Medicare Part A/SSI fractions for federal fiscal year 2012, including Part C days for all hospitals in the country. The Secretary provided no explanation for the decision to include Part C days in the Medicare Part A/SSI fractions for fiscal year 2012, but instead issued those fractions as it had for prior years.   Certain hospitals in the *Allina I* litigation filed a separate action in this Court challenging the 2014 determination. The Secretary moved to dismiss the action, asserting that his Provider Reimbursement Review Board ("PRRB") had incorrectly granted expedited judicial review in that case, but this Court rejected that motion. This Court then granted the Secretary's motion for summary judgment in *Allina Health Servs. v. Burwell*, 201 F. Supp. 3d 94, 109 (D.D.C. 2016), which the hospitals appealed.

34.     In 2017, the D.C. Circuit issued its decision in *Allina II*, holding that the Secretary "violated the Medicare statute by failing to provide for notice and comment" before readopting the previously invalidated 2004 policy.   *Allina II*, 863 F.3d at 942. The D.C. Circuit concluded that the Medicare statute at 42 U.S.C. § 1395hh(a)(2), required rulemaking for any "(1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services,'" and that the Secretary's issuance of the fiscal year 2012 Medicare Part A/SSI fractions including Part C days satisfied each of these factors requiring formal rulemaking.   *Id.* at 943.   The D.C. Circuit also found that the Secretary violated another provision of the Medicare statute, 42 U.S.C. § 1395hh(a)(4), which provides that "if a regulation includes 'a provision that is not a logical outgrowth of a previously

published notice of proposed rulemaking,' that provision may not become legally operative until
it has gone through notice-and-comment rulemaking." *Id.* at 945.

35.     The Supreme Court affirmed the ruling in *Allina II*.   The Supreme Court held that
the Secretary's 2014 application of the 2004 Part C days policy required notice-and-comment
rulemaking under 42 U.S.C. § 1395hh(a)(2).   *Azar v. Allina Health Services*, 139 S. Ct. 1804,
1816 (2019).   In addition, the Supreme Court's decision did not disturb the Court of Appeals'
ruling that the readopted 2004 policy is invalid under 42 U.S.C. § 1395hh(a)(4) because the
Secretary failed to engage in notice-and-comment rulemaking.

### Review of Medicare Payment Determinations

36.     After the close of each fiscal year, a hospital is required to file a "cost report"
with a Medicare Administrative Contractor ("MAC") designated by the Secretary.

37.     The MAC analyzes a hospital's cost report and issues a year-end determination as
to the amount of Medicare program reimbursement due the hospital for services furnished to
Medicare patients during the fiscal year covered by the cost report.

38.     A hospital may appeal a MAC's determination as to the total amount of Medicare
program reimbursement due the hospital to the PRRB.

39.     A hospital has the right to a hearing before the PRRB if it is dissatisfied with the
MAC's payment determination.

40.     The Medicare statute authorizes the PRRB to determine that it is without authority
to decide questions of law relevant to an appeal before the PRRB and grant the right to
"expedited judicial review" ("EJR").   42 U.S.C. § 1395oo(f)(1).   Unless modified by the
Secretary in accordance with federal law, the PRRB's decision to grant EJR renders the
administrative decision final and subject to judicial review.  *Id*.

## FACTS SPECIFIC TO THIS CASE

41.     The Plaintiff Hospital received a notice of program reimbursement including a final DSH payment determination for each of the cost reporting periods at issue.

42.     The Plaintiff Hospital timely filed an appeal to the PRRB contesting the determination of the DSH payment amount due for the fiscal years at issue on the ground that it wrongly *included* Part C patient days in the Medicare Part A/SSI fraction and wrongly *excluded* those Part C patient days from the numerator of the Medicaid fraction (hereinafter "modified Part C policy").

43.     The PRRB on its own motion granted EJR with respect to the Plaintiff Hospital's appeals at issue.

44.     By letter sent via email on March 24, 2020, attached as Exhibit 1, the PRRB notified the Plaintiff Hospital that on its own motion, the PRRB granted EJR as to Plaintiff Hospital's appeals.  The PRRB's EJR decisions were based on the PRRB's findings that the PRRB had jurisdiction over the appeals, that the Secretary has not acquiesced in the decision in *Allina I*, that the PRRB therefore remains bound by the terms of the 2004 rule on the treatment of Part C days in the DSH payment calculation, 42 C.F.R. § 412.106(b)(2)(i)(B) and (b)(2)(iii)(B) (2004), and the PRRB therefore lacks authority to decide the validity of the modified Part C policy that was applied in the payment determinations at issue.

45.     The Secretary did not modify the PRRB's grants of EJR as of the filing of this Complaint.

46.     By the filing of this Complaint within 60 days after receipt of the PRRB's EJR determination, the Plaintiff Hospital has timely commenced this action for judicial review under 42 U.S.C. § 1395oo(f)(1).

## ASSIGNMENT OF ERRORS

47.    The Medicare statute provides for judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the Administrative Procedures Act ("APA").  42 U.S.C. § 1395oo(f)(l).

48.    The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

### Count I: The Secretary's Unlawful Treatment of Part C Days in the DSH Calculation

49.    The Plaintiff Hospital incorporates by reference all allegations set forth in paragraphs 1 through 48 above.

50.    The Secretary's calculation of the Plaintiff Hospital's DSH payments for the fiscal years at issue under the modified Part C policy is procedurally and substantively invalid and should be set aside, because the Secretary's application of the modified Part C policy is arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, and without observance of procedure required by law, including for (but not limited to) the reasons more specifically described below.

51.    The Secretary's DSH determinations under the modified Part C policy are procedurally invalid under the Medicare statute, 42 U.S.C. § 1395hh. The Medicare statute requires notice-and-comment rulemaking for a "rule," a "requirement" or a "statement of policy" that "establishes or changes a substantive legal standard governing the payment for services." 42 U.S.C. § 1395hh(a)(2). *See Allina II*, 139 S. Ct. at 1810-14 (upholding the D.C. Circuit's finding

13

that Secretary "violated" the rulemaking provisions of the Medicare statute under 42 U.S.C. § 1395hh(a)(2) by failing to provide for notice and comment).

52.     Further, the Medicare statute provides that if a final rule is not a logical outgrowth of a proposed rule, then it "shall not take effect" until there is further opportunity for comment and publication again as a final rule. 42 U.S.C. § 1395hh(a)(4). *See Allina II,* 863 F.3d at 945 (the Secretary violated 42 U.S.C. § 1395hh(a)(4) by not providing a "further opportunity for public comment and a publication of the [2004] provision again as a final regulation" before reimposing the 2004 rule vacated for a logical outgrowth failure). This Court has already ruled, and the D.C. Circuit has affirmed this Court's ruling, that the 2004 rule was not a logical outgrowth of the proposed rule.

53.     The Secretary's DSH payment determinations for the fiscal years at issue are also invalid under the APA's notice-and-comment rulemaking requirement. Under established circuit precedent applying the APA, "[u]nless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a rule or regulation," *Am. Fed'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*, 777 F.2d 751, 759 (D.C. Cir. 1985). The pre-2004 regulation, which was restored by the Court's vacatur in *Allina I*, dictates the exclusion of Part C days from the number of Part-A-entitled days in the Medicare DSH calculation. That pre-2004 regulation specifies that the Part A/SSI fraction includes only "covered" patient days, *see* 42 C.F.R. §§ 412.106(b)(2)(i) (2003), meaning days paid under Medicare Part A.  Part C days are not covered by Part A, because payment by private Part C Medicare Advantage plans for services furnished to their Part C patients is *not* payment under Medicare Part A. *See* 42 U.S.C. § 1395w-21(a)(1). The Secretary cannot effectively amend the pre-2004 reinstated legislative rule except through notice-and-comment rulemaking. *See Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Sullivan*,

979 F.2d 227, 241 (D.C. Cir. 1992) ("Once a regulation is adopted by notice-and- comment rulemaking . . . its text may be changed only in that fashion.") (quoting *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir. 1987)).

54.     The Secretary's DSH payment determinations are also substantively invalid because the agency did not consider the matter in a detailed and reasoned fashion in adopting the 2004 rule and the modified Part C policy adopted in that rule is not consistent with the underlying statutory scheme.   Further, the Secretary has not acknowledged that the policy adopted in the 2004 rule departed from the pre-existing rule and practice regarding the treatment of Part C days in the DSH payment and has not explained any good reason for that change. Likewise, the Secretary has never acknowledged the adverse financial impact on hospitals of the 2004 policy change, nor has the Secretary ever explained why the policy change is appropriate despite that adverse impact on the nation's safety-net hospitals, like the Plaintiff Hospital, that shoulder the financial burden of treating a disproportionate share of low-income patients.

55.     The Secretary's modified Part C policy is also contrary to the intent of Congress in enacting the DSH statute and fails the reasonableness test under *Chevron*.   *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837 (1984).

56.     The Secretary's continued use of the modified Part C policy to uphold the Medicare payment determinations for the Plaintiff Hospital, despite the decisions of this Court, the D.C. Circuit and the Supreme Court, is arbitrary and capricious, an abuse of discretion, not in accordance with law and, therefore, a violation of the APA.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff Hospital requests an Order:

a.      declaring invalid and setting aside the Secretary's final decision that included Medicare Part C days in the Medicare Part A/SSI fraction and excluded Medicaid-eligible Part C patient days from the numerator of the Medicaid fraction used to calculate the Plaintiff Hospital's Medicare DSH calculations for the cost reporting periods at issue;

b.      directing the Secretary to recalculate the Plaintiff Hospital's DSH payments consistent with that Order and to make prompt payment of any additional amounts due the Plaintiff Hospital, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

c.      requiring the Secretary to pay legal fees and costs of the suit incurred by the Plaintiff Hospital; and

d.      providing such other and further relief as the Court may consider appropriate.

Dated:  May 22, 2020                         Respectfully submitted,


   */s/ Leslie Demaree Goldsmith*
Leslie Demaree Goldsmith (DC Bar No. 422759)
BAKER, DONELSON, BERMAN,
CALDWELL & BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, Maryland 21202
Phone: 410-862-1133
Email: lgoldsmith@bakerdonelson.com

*Counsel for Plaintiff,*
*Memorial Hospital at Gulfport*